Revised 03/06 WDNY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

## FORM TO BE USED IN FILING A COMPLAINT
## UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983
### (Prisoner Complaint Form)

All material filed in this Court is now available via the **INTERNET**.  See **Pro Se Privacy Notice** for further information.

## 1. CAPTION OF ACTION

**A.**     **Full Name And Prisoner Number of Plaintiff:  NOTE:**  *If more than one plaintiff files this action and seeks in forma pauperis status, each plaintiff must submit an in forma pauperis application and a signed Authorization or the only plaintiff to be considered will be the plaintiff who filed an application and Authorization.*

1. Theil Thamar Stapleton

2. _____

-VS-

**B.**     **Full Name(s) of Defendant(s) NOTE:**  *Pursuant to Fed.R.Civ.P. 10(a), the names of all parties must appear in the caption. The court may not consider a claim against anyone not identified in this section as a defendant.  If you have more than six defendants, you may continue this section on another sheet of paper if you indicate below that you have done so.*

1. P.Chappius Jr.                        4. _____

2. P.Ballard                             5. _____

3. M.Fanelli                             6. _____

## 2. STATEMENT OF JURISDICTION

This is a civil action seeking relief and/or damages to defend and protect the rights guaranteed by the Constitution of the United States.  This action is brought pursuant to 42 U.S.C. § 1983.  The Court has jurisdiction over the action pursuant to 28 U.S.C. §§ 1331, 1343(3) and (4), and 2201.

## 3. PARTIES TO THIS ACTION

**PLAINTIFF'S INFORMATION  NOTE:**  *To list additional plaintiffs, use this format on another sheet of paper.*

Name and Prisoner Number of Plaintiff: Theil Thamar Stapleton Din.#04-A-1701

Present Place of Confinement & Address: Elmira Correctional Facility P.O. Box 500 Elmira,New York 14902

_____

_____

Name and Prisoner Number of Plaintiff:_____

Present Place of Confinement & Address:_____

_____

_____

**DEFENDANT'S INFORMATION** NOTE: *To provide information about more defendants than there is room for here, use this format on another sheet of paper.*

Name of Defendant:  P.Chappius Jr..

(If applicable) Official Position of Defendant:  Superintendent

(If applicable) Defendant is Sued in  both  Individual and/or  X   Official Capacity

Address of Defendant:

Name of Defendant:  P.Ballard

(If applicable) Official Position of Defendant:  Lieutenant

(If applicable) Defendant is Sued in  both  Individual and/or  X   Official Capacity

Address of Defendant:

Name of Defendant:  M.Ballard

(If applicable) Official Position of Defendant:  Sargent

(If applicable) Defendant is Sued in  both  Individual and/or  X   Official Capacity

Address of Defendant:

## 4. PREVIOUS LAWSUITS IN STATE AND FEDERAL COURT

A.    Have you begun any other lawsuits in state or federal court dealing with the same facts involved in this action?
Yes  X   No____

If Yes, complete the next section.  NOTE: *If you have brought more than one lawsuit dealing with the same facts as this action, use this format to describe the other action(s) on another sheet of paper.*

1.    Name(s) of the parties to this other lawsuit:

Plaintiff(s):  Theil Thamar Stapleton

Defendant(s):  John Lempke; John Colvin; Captain Picole;Lt.Fergunson;Sergeant Roberts & C.O.Roberts /D.O.C.C.S.

2.    Court (if federal court, name the district; if state court, name the county):United States Western District Court Of The State Of New York /Court Of Claims Of The State Of New York

3.    Docket or Index Number:  11-CV-00594-HBS  /Claim No.#113044

4.    Name of Judge to whom case was assigned: (Justice In Federal Suite Unknown) In State; Judge C.Schaewe

2

The approximate date the action was filed: _September 2012 /December 2006_

6.      What was the disposition of the case?

Is it still pending?  Yes_____  No__X__

If not, give the approximate date it was resolved. _June 2013 /October 2013_

Disposition (check the statements which apply):

_____ Dismissed (check the box which indicates why it was dismissed):

_____ By court *sua sponte* as frivolous, malicious or for failing to state a claim upon which relief can be granted;

_____ By court for failure to exhaust administrative remedies;

_____ By court for failure to prosecute, pay filing fee or otherwise respond to a court order;

_____ By court due to your voluntary withdrawal of claim;

__X__ Judgment upon motion or after trial entered for

X  _____ plaintiff

_____ defendant.

B.      Have you begun **any other lawsuits** in **federal court** which **relate to your imprisonment**?

Yes_____   No__X__

If Yes, complete the next section. NOTE: *If you have brought more than one other lawsuit dealing with your imprisonment, use this same format to describe the other action(s) on another sheet of paper.*

1.      Name(s) of the parties to this other lawsuit:

Plaintiff(s):_____

_____

Defendant(s):_____

_____

2.      District Court:_____

3.      Docket Number:_____

4.      Name of District or Magistrate Judge to whom case was assigned:_____

_____

5.      The approximate date the action was filed:_____

6.      What was the disposition of the case?

Is it still pending?  Yes_____  No_____

If not, give the approximate date it was resolved._____

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------X
MR. THEIL THAMAR STAPLETON,          :
               Plaintiff,    :
                            :
                            :               COMPLAINT
                            :      CIVIL ACTION No.#
     -against-             :
                            :
P.Chappius Jr.:Superintendent,       :
Lieutenant R.Ballard,                :
Sergeant M.Fanelli,                  :
Of Elmira Correctional Facility,     :
                 Defendants.  :
------------------------------------X

### I. JURISDICTION & VENUE

1. THIS IS A CIVIL ACTION AUTHORIZED BY
   42 U.S.C.§1983 TO REDRESS THE DENAIL
   , UNDER THE COLOR OF  STATE  LAW, OF
   RIGHTS SECURED BY THE  CONSTITUTION
   OF THE UNITED  STATES. THE COURT HAS
   JURISDICTION PURSUANT TO 28 U.S.C. §
   § 1331 &  134  3  (a)  (3).

2. THE COUNTY OF  CHEMUNG, ELMIRA, NEW
   YORK IS  THE  APPROPRIATE VENUE
   PURSUANT TO 28 U.S.C. §1391 (b) (2),
   BECAUSE IT IS WHERE THE EVENTS GIVING
   RISE TO THIS  CLAIM  OCCURRED.

### II. PLAINTIFF

3. PLAINTIFF, THEIL  THAMAR  STAPLETON,
   DIN.#04-A-1701 ;NYSID # 57032991  IS
   AND WAS AT ALL TIMES MENTIONED HEREIN
   , A PRISONER OF THE STATE OF NEW YORK
   IN THE CUSTODY OF THE NEW YORK STATE
   DEPARTMENT OF CORRECTIONS & COMMUNITY
   SUPREVISION (Hereinafter [N.Y.D.O.C.C.S])
   . THE ELMIRA  CORRECTIONAL  FACILITY
   POST OFFICE BOX 500 1879 DAVIS STREET
   & BANCROFT ROAD.

### III. DEFENDANTS

4. Defendant, Paul W.Chappius Jr. is/was
the Superintendent of Elmira Correctio-
nal Facility, for the New York State
Department Of Correctional & Community
Supervision, in the State Of New York.
He is/was legally responsible for the
overall operation and supervision of
all Departmental Employees including
Civilian & Security Personal, employed
to serve and operate exculsively at
Elmira Correctional Facility.

5. Defendant, Lieutenant Roni J.Ballard is/
was the tier hearing officer at Elmira
Correctional Facility, for the State Of
New York Department Of Corrections &
Community Supervision, in the State
Of New York. He is/was responsible for
the overall operation of the tier
hearing conducted as designated by the
Superintendent of Elmira Correctional
Facility.

6. Defendant Mark V.Fanelli is/was an area
Sergeant and supervisor at Elmira
Correctional Facility, for the State
Of New York State Department Of
Corrections & Community Supervision,
in the State Of New York. He is/was
responsible for writing an MISBEHAVIOR
REPORT that initiated the deprivation
of Plaintiff's religious right to
worship/practice without fear of
discrimination, retaliatory,
prejudicial, bias, and hostile conduct.
He is/was designated to serve and
operate exclusively at Elmira
Correctional Facility.

## IV. THE FACTS

7. On the 21st day Of September, 2014, the Plaintiff Mr.Thoil
Tnamar Stapleton, Din.#04-A-1701, [hereinafter the "Plaintiff"],
while under the **care, custody, and control** of the N.Y.S.D.O.C.C.S.
at Elmira Correctional Facility in Chemung county, State Of New

York, was written an misbehavior report by Sergeant Mark V.Fanelli for violating departmental rules & regulations, pursuant to Chapter V., Title 7 of New York Code Of Rules & Regulation (hereinafter N.Y.C.R.R.). The afore-mentioned procedural rule listed that plaintiff was accused of violating was:
106.10 Direct Order.
(Annexed hereto Exhibit A [Misbehavior Report])

### THE SEQUENCE OF EVENTS RELATIVE TO THE MISCONDUCT

**8.** Prior to the incident being brought forth, plaintiff had an altercation with Sergeant M.Fanelli (hereinafter Def.2) on an prior occasion pertaining to the plaintiff wearing religious/cultural head-gear ie. Kufi. Plaintiff filed an complaint addressing the nature of the incident and the vulgarity of the language utilized by Def.2 when he had addressed the plaintiff about wearing a Kufi.

(Annexed hereto Exhibit B [Grievance])

**9.** No hearing had been conducted because it had been advised to the plaintiff by an grievance representative that the complaint would be dismissed as being without merit. So the plaintiff had signed off the complaint.

**10.** Approximately around the 19th day of September, 2014, or soon therebefore a Chaplin of Elmira Correctional Facility (Imam Iffi) had informed the necessarry security personal that, members of the **NATION OF ISLAM** (hereinafter N.O.I.) are entitled to wear religious head gear i.e. Kufis, pursuant to an recent Central Office Review Committee (hereinafter C.O.R.C.) decision. The in-house chaplin had then informed practicing members of N.O.I. of the recent C.O.R.C. decision. Since that time members had been wearing said religious head gear as apart of religious/cultural practice.

**11.** Def.2 had seen others members of the **Nation Of Islam** wearing Kufi's and did not take up any negative action  towards them.

**12.** Plaintiff was witnessed on the day in question wearing said religious head gear in the field house (recreation area) during the 3-11 tour and had become extremely violent, belligerent and unhinged. Def.2 had threatened the plaintiff. Def.2 stated that "your not entitled to wear a Kufi because the Nation Of Islam is not recognized as an legitimate muslim organization". Def.2 then stated " I should snatch that fucking Kufi off your head...". Def.2 waited until the plaintiff was in an isolated area when the recreation period was ended. Def.2 cornered the plaintiff at the cross gates going back toward his housing unit (I-Block) in the presence of 5 officer(s) and 3 other sergeant(s). Def.2 reiterated he prior threat and stated " if you don't take that fucking Kufi off, I am going to beat your ass all the way to the red door you fucking cunt".

[Note:The red door is the Special Housing Unit [SHU])

Def.2 continued stating that " I don't need my boys either, I'll tell them to leave and I'll do it by myself you fucking pussy. All you fucking N.O.I."s is nothing but terrorist and fucking racist. You should be hunted down and hung like dogs".

**13.** Plaintiff had then returned to his cell location. During the A.M go around, the plaintiff was notified that he was keep-locked (confined to cell) pending an  hearing  for  an  misbehavior  report written by Def.2.

**14.** As an result of the plaintiff being confined to his cell, he had been unable to participate in the Eid-Ul-Fitr. An religious event which celebrates the sacrifice made for the fasting during the month

of Ramadan. In addition to being prevented from being able to physically participate in the religious event, Def.2 continued to show his contempt for the plaintiff by having his name removed from the event list. Thereby preventing the plaintiff from receiving an meal while being keep-locked. Def.2 had also moved to have the plaintiff removed from his assigned programs before the disposition was rendered at the plaintiff's tier hearing.

**15.** At the tier hearing, the hearing officer Lieutenant R.Ballard (hereinafter Def.3) had read into the record the misbehavior report and the plaintiff had then gave his testimony. The plaintiff offered testimony that provided his defense. The plaintiff had alerted Def.3 that he was not in violation of an direct order because he was entitled to wear a Kufi and the order given was an blatant disregard of plaintiff's right to practice his religion. In addition, the plaintiff had informed Def.3 that the Imam Muslim Chaplin (Imam Iffi) had informed the plaintiff that it was permissible to wear said religious head-wear via C.O.R.C's recent decision which allowed practicing members of N.O.I. to wear religious head gear.

**16.** Def.3 had refused to acknowledge the testimony of the plaintiff. He found the plaintiff guilty of the sole charge in the misbehavior report and the reasons for the disposition was solely premised upon the written misbehavior report.

(Annexed hereto Exhibit C [Reason For Disposition])

**17.** Plaintiff has then filed an interdepartmental appeal. The appeal had resulted in the dismissal of the misbehavior report and it being expunged from the plaintiff's record, and the disposition reversed. The plaintiff had been released from keep-locked status.

All of the plaintiff's restrictions had been restored with the exception of the $5.00 surcharge and the plaintiff's program assignment. Plaintiff had requested to have the reasons for the dismissal provided to him in writing, in addition to being restored to his assigned program. To no avail, no response had been offered.

(Annexed hereto Exhibit(s) D & E
[Appeal & Request For Reinstatement])

**18.** The plaintiff had then went to the program committee to seek reassignment/reinstatement of his program. The program committee supervisor had then informed the plaintiff that "I was told by security that you can not be placed back in those programs because you argued with a sergeant, and that you only beat your ticket on a technicality".

## V. EXHAUSTION OF ADMINISTRATIVE/STATE REMEDIES

**19.** The plaintiff activated the proper channels/mechanism's available to him so as to remedy the problem(s) he has been encountering and the misbehavior report. In addition to filing an appeal, the plaintiff had filed formal complaint notices to the proper authorities. The plaintiff had filed an interdepartmental complaint with the inmate grievance committee; to the superintendent; and to the commissioner of N.Y.S.D.O.C.C.S.

(Annexed hereto Exhibit(s)F,G,H,I)

Emphatically, the PRISON LITIGATION REFORM ACT [hereinafter P.L.R.A.], state that "[n]o action shall be brought with respect to prison conditions... by a prisoner confined to any jail, prison, or other Correctional Facility until such Administrative remedies as are available are exhausted". 42 U.S.C.A. §1997 subd.   (e)   [a].   The

paintiff has complied with the above statutory requirement(s).

## VI LEGAL CLAIMS

**20.** The plaintiff re-allege and force as to the facts as he believes them to be that are incorporated by reference to ¶ 1-19, as fully set  forth herein.

**21.** The **DUE PROCESS CLAUSE** of the **FOURTEENTH AMENDMENT**, states in pertinent part:

> "No State shall... deprive any person of
> Life, Liberty, or Property, without **DUE
> PROCESS** law Law; nor deny any Person
> within its jurisdiction the **EQUAL
> PROTECTION** of the Laws".
> Id.
> The Constitution Of The United
> States declares also in pertinent
> part that:
> Congress shall make no laws respecting
> an establishment of religion, or
> prohibiting the free exercise thereof".
> Id.

## VII. THE DUE PROCESS VIOLATION

**22.** The plaintiff's **DUE PROCESS & EQUAL PROTECTION OF THE LAW** discussion begins with the violation of **42 U.S.C.A.§ 2000cc-1**, (w)here §1983 allows the plaintiff to file such cause of action against the defendant(s). Said provision of law lies within §1983 of title 42 of the U.S. code, enacted by congress, inconjunction with §5 of the **FOURTEENTH AMENDMENT**, which makes an action for damages and injunctive relief against individuals and local governmental bodies who had deprived the plaintiff of his religious right to participate, practice privileges, or immunities "secured by the Constitution and Laws" available". The plaintiff is only hereby required to establish a prima facie §1983 cause of action based upon any constitutional violation(s) within the before mentioned statutes. However, the plaintiff will prove that the defendant(s) conduct was the cause in

fact of plaintiff's constitutional deprivation(s). Such
deprivation(s) include; the violation(s) of the **FOURTEENTH AMENDMENT**
guarantees, for example; the violation of the plaintiff's right(s) to
procedural due process and the equal protection of the laws that
flows from thereof that protects the plaintiff from unwarranted
restrictions to practice and to participate in his religious/cultural
events without fear of bias and prejudicial treatment. The expressed
violation of those provisions of the **BILL OF RIGHTS** are incorporated
by the **DUE PROCESS CLAUSE** of the **FOURTEENTH AMENDMENT** and made
applicable to the states. Thus, any violation(s) of those
constitutional right(s) are based upon the <u>due process clause</u>, so
that they may not be mentioned in the constitution explicitly and,
can not be seen as excusable actions thereof.

**23.** To present/establish a prima facie §1983 cause of action
inconjunction with federal statutory provisions of laws, the
plaintiff will similarly show that, the defendant(s) conduct was an
action that imposed upon the plaintiff's constitutional right(s).
Thus, causing such deprivation upon the plaintiff's fundamental
guarantees, it is the **FOURTEENTH AMENDMENT** violation and or a federal
statutory violation when it is being asserted that, the actions are
being challenged, is conduct by one 'under the color of law'.

**24.** The **SUPREME COURT** has declared that, under the **FOURTEENTH
AMENDMENT** these provision(s) are to be applicable to the **BILL OF
RIGHTS**, with no indifference towards standards governing the states
as govern by the federal government, they are;

> Free exercise and establishment
> of religion under the First Amendment.

**25.** Pursuant to the **RELIGIOUS EXERCISE IN LAND USE AND BY**

INSTUTIONAL PERSONS [hereinafter RLUIPA], 42 §2000cc (a) [1];(b) [1], the plaintiff has the fundamental guaranteed explicit right to expression of religious practice and participation. The defendant(s) has disregarded those right(s) and penalized the plaintiff because the plaintiff had expressed those right(s). Def.2 had taken it upon himself to abuse his authority by subjecting the plaintiff to disciplinary actions and sanctions because he had activated his religious right to practice and worship in his own accord.

26. Def.3 had enforced Def.2's bias actions when he chose to not be an impartial tier hearing officer. Def.3 put before the plaintiff his position when he found the plaintiff guilty for disobeying an direct order that went against his right to practice his religion the way he sees fit. When an direct order is given by correctional staff that is contrary or displays an utter disregard for ones religion, and it is apparent that no security interest is at issue, it becomes an violation of the **FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION** which allows damages and injunctive relief sought by the plaintiff to be granted.

## VIII. FIRST AMENDMENT RIGHT VIOLATION

2.7. The **FIRST AMENDMENT** prohibits government officials from engaging in the subjugation and suppression of religious practice in a manner which can be reasonably interpreted as intimating some form of punishment or adverse regulatory action which will follow the failure to accede to governmental demands. Under the **RLUPIA** act of 2000, the plaintiff has the statutory right to practice an religion (N.O.I. [Muslim]) without any discrimination and/or bias treatment for the practice thereof. See **42 U.S.C.A. § 2000cc (a)(1);(b)(1) & (2):**

"No government shall impose or implement
a land use regulation in a manner
that imposes a substantial on the
religious exercise of a person,
including a religious assembly or
institution unless government demonstrates that
imposition of the burden on that person,
assembly, or institution--"
id.
"No government shall impose or implement
a land use regulation in a manner
treats a religious assembly or institution
on less than equal terms with nonreligious
assembly of institution."
id. &
"No government shall impose or implement
a land use regulation that discriminates
against any assembly institution
on the basis of religion or
religious denomination."

id.

28. " The right to exercise religious practices and beliefs dose not terminate at the prison door" <u>McElyea v. Babbitt,</u> 833 F.2d.196,197. Through the **FIRST AMMENDMENT FREE EXERCISE CLAUSE,** the plaintiff has the guaranteed right to practice his religion freely. This provision is made applicable via the **FOURTEENTH AMENDMENT,** which "forbids all laws 'prohibiting the free exercise' of religion". See <u>Davis v.Powell,</u>901 F.Supp.2d.1196,1222 (<u>citing</u> MaDaniel v.Paty,435 U.S. 618,620, 98 S.Ct.1322, 55 L.Ed.2d. 593 (1978). Def.2 had began his discriminatory action against the plaintiff when he insisted that the **NATION OF ISLAM** is not an legitimate muslim religion and defined the N.O.I. as terrorist, and that they have no approved religious practice to wear head gear in prison.

29. In respects to Def.2's contention, Kufi's are worn in all muslim communities, and are practice rights for those in prayer daily. Or, those who pray. The N.O.I. members pray 5 times a day like

any other muslim sect. The N.O.I. members pray to and worship one God whose name is ALLAH. There can be no 'laws made' to discriminate against any religion or their practices as was done by Def.2. Correctional officials must afford a prisoner of a minority religion 'a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious percepts'" Id. (quoting Cruz v. Beto,405 U.S. 319,322, 92 S.Ct.1079, 31 L.Ed.2d.263 (1972); See also Shakur v. Selsky,514 F.3d.at 891 (2nd.Cir.2004).

**30.** Def.2 whom, in his individual capacity, is employed by a governmental agency. In his employment, he has been practicing **non-administrative** policies that has the effect of taking up discriminatory actions against the plaintiff.

**31.** " A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penologilical objectives of the corrections system", Davis id.at 1212 (citing-Pell v. Procunier,417 U.S.817 at,822, 94 S.Ct.2800, 41 L.Ed.2d.495 (1974). The plaintiff, as acknowledged by Def.2, is a member of the **NATION OF ISLAM.** Their now can be no "penologilical objectives" asserted by the defendants in this regard unless Def.2 retains that the NATION OF ISLAM are "terrorist".

**31.** In having these protected **FIRST AMENDMENT** Rights, Def.2 had became intrusive and violative as to how the plaintiff is to worship and practice his religion.

### RETALIATION BY DEFENDANT (Mark V.Fannelli: Sergeant)

**32.** To prove that an governmental official has taken up retaliatory actions, it must be shown that:
(1) the speech/conduct was protected by the **FIRST AMENDMENT;**

    (2) defendant took an adverse action against him &;
        (3) there was a casual connection between
this adverse action and the protected speech/conduct.
    See Scott v.Coughlin, 344 F.3d.282 [2nd.Cir.2002]

   Plaintiff first contends that he had an religious right to wear
religious head gear which was the initial point of dispute. The
N.Y.S.D.O.C.C.S. directive(s) state in pertinent part, inconjunction
with RLUIPA **42 U.S.C.A.§2000cc** that:

> **"Inmates are permitted to wear religious head
> coverings as permissible in a correctional
> setting and outlined in the Religious Calendar".
> N.Y.C.R.R. TIT. DIR.§4202 subd.XIII**

   **33.** Def.2 had approached the plaintiff regarding the same
religious practice (wearing head-covering) prior to the incident in
the present cause of action. The plaintiff had in fact complained of
Def.2's racist remarks, statements and conduct towards the plaintiff.
Because of the prior complaint, Def.2 has now subjected the plaintiff
to actions that were the same as those in the initial complaint.

        Annexed hereto Exhibit I [Initial Complaint]

   **34.** Def.2 had then taken action against the plaintiff in his own
hands by abusing his authority by manufacturing a false misbehavior
report, alleging that the plaintiff had disobeyed an direct order
that was against current policy and procedure in accordance to
N.Y.S.D.O.C.C.S directives concerning religious practices. Def.2 had
also enlisted other security personal to prohibit the plaintiff from
partaking in the celebration of his religious event (Ed-Ul-Fitr).
Def.2 had sought out specific officials to have the plaintiff's name
removed from the event list and t'le keep-locked feed-up list, which
was in commemoration for the sacrifice made during the month of
Ramadan. In addition, Def.2 manufacturing a misbehavior report, Def.2

had abused his authority in his individual capacity by getting the plaintiff terminated from his program assignment, and preventing the plaintiff from being reinstated. Thus, restricting the plaintiff from partaking in the rehabilitative process. See Anyanwutaku v. Moore,151 F3d.at 1058.

**35.** The **SECOND CIRCUIT Court** held in Graham v. Henderson,89 F2d.75 [C.A.2.(N.Y.)1996] that;"...met his threshold burden of establishing retaliatory motive, creating a genuine issue of material fact" had been present in prison officials conduct against Graham.

**36.** It must be first acknowledged that, prison officials must adhere to their own rules and regulations that they are governed by. See Bryant v. Coughlin,161 AD2d 933,557 NYS2d.504, [N.Y.A.D. 3rd,Dept.1990]. When prison officials conduct themselves 'under the color of law', they will not expose themselves to any covert or implied retaliation. Def.2 had placed the plaintiff in an unwarranted position by not conducting himself in an professional manner.

**37.** "It is well-established that prison officials may not retaliate against inmates for exercising their constitutional rioghts"; Baskerville v. Blot,244 F.Supp2d 723,732 [S.D.N.Y 2002], (citing Colon v. Coughlin, F.3d. 489 [2nd. Cir.2001], the Court found "there was a causal connection between the "rotected speech and the adverse action". Not until the plaintiff had complained of Def.2's unprofessional conduct did the plaintiff lose his program assignment, Anyanwutaku supra.; had an misbehavior report written against him; and to have him restricted from participating in his religious event (Ed-ul-Fitr). See Shakur v. Selsky,391 F.3d.[2nd Cir.2004]. Def.

2 had de''rived the plaintiff from participating in his rel''gious practice and prohibited him from engaging in the rehabilitative process. His action amounted to a blatant violation of the plaintiff's **FIRST & FOURTEENTHMENT RIGHTS** because the plaintiff had complained of his conduct and his perceived concepts about the **NATION OF ISLAM.**

## IX. IMPARTIAL HEARING OFFICER

38. It is well established in the State Of New York via case law that the plaintiff was entitled to an fair and impartial tier hearing officer. It is the plaintiff's intention to show that the tier hearing officer, (Def.3), Lieutenant R. Ballard, had premised the reason(s) for his disposition solely on the written misbehavior from his subordinate. Def.3 did not choose to ascertain any facts, as it pertained to the misbehavior report. Nor did he wish to investigate any claims made by the plaintiff.

39. In <u>Pino v. Dalshiem</u>, 605 F.Supp.1305,1318 [S.D.N.Y.1984] (holding" fact-finder is required to consider in good faith the substance of the inmate's defense"). Further in <u>Patterson v. Coughlin</u>, 905 F.2d.564,570 [2nd. Cir. 1990] (''olding "an "Impartial Decision maker" dose n[o]t prejudge the evidence and...cannot say...how he would assess evidence he has n[o]t yet seen").

## STATE PRISONERS AND THE PREISER/HECK RULE

40. In <u>Heck v. Humphrey</u>, 512 U.S. 477,486-87,144 S.Ct.2364 (1994), the **UNITED STATES SUPREME COURT** held in pertinent part the following:
> "[I]n order to recover damages for allegedly
> unconstitutional conviction or
> imprisonment, or for other harm
> caused by actions whose unlawfulness
> would render a conviction or sentence
> invalid, a §1983 plaintiff <u>must</u> prove that the

conviction or sentence has been reversed on direct appeal,
expunged by executive order, decalred
invalid by a State tribunal authorized
to make such determination, or
called into question by a Federal Court's
issuance of a Writ Of Habeas Corpus...."

41. Later, the **United States**, three years later, in Edwards
v.Balisok,520 U.S. 641,117 S.Ct.1584 (1997) [Citation Omitted] held
"that tne "favorable termination" rule of Heck v. Humphrey, supra,
also applies to Disciplinary Proceedings, when it stated:
"An inmate cannot bring §I983 challenging
disciplinary conviction if he has lost
goodtime or the length of his confinement has been
extended until the conviction had been
reversed or invalidate".
Id.

42. The plaintiff, now avers to this Court, that he has satisfied
the threshold criteria, and submits that via the documents submitted
as Exhibit C, is evidence as to the stated claim that De".3 had been
impartial and had chosen not to examine all the evidence (plaintiff's
testimony and the misbehavior report) to be an impartial fact-
finder.

43. **Directive §4202** states in pertinent part that:
"Inmates are permitted to wear religious
head coverings as permissible in a   ·
correctional setting and outlined in the
Religious Calendar.
A. A facility Chaplain is to determine whether the
head-covering itsel" isligitimate and whether
it is being worn appropriately as noted
and approved in the directive and
Religious. This is to be verified
via noted policy and consulting the assigned
MPC. If a Chaplain of the inmate's faith
belief is unavailable, the Corrdinating Chaplain
should be consulted. If there are additional
questions surrounding the validity
of the item then the assigned
MPC should be consulted."
Id.

44. The misbehavior report referred to an directive (See Annexed

Exhibit A). The plaintiff testified that the MPC informed him that Kufi's are permissible. "Questions surrounding the validity of the item" should have been addressed to the facility Chaplain.

**45.** As oppose to making the proper inquiry, Def.3 relied solely on the false, insufficient evidence of the misbehavior report.

## X. SUPERVISORY LIABILITY

**46.** The Superintendent of Elmira Correctional Facility, Paul Chappius Jr. (Def.1) had  professional knowledge of the plaintiff's rights being violated. His involvement, though scant, is enough to hold Def.1 liable for not acting in an professional capacity to have his subordinates cease and desist in their unprofessional conduct.

**47.** The plaintiff now contends that under the **ELEVENTH AMENDMENT** that the plaintiff can seek monetary damages against Def.1 in his supervisory capacity, see Farid v.Smith, 850 F.2d 917,921 (2nd Cir.1988). In Mateo v. Fischer,682 F.Supp.2d 423,429-30, the Court acknowledged the extent in which supervisors can be held liable. The Court viewed the 5 prong test in  Wright v. Smith,21 F3d 496,501 [2d Cir.1994] when it rendered its decision.
"A plaintiff may establish a prison supervisor's personal
involvement by showing that he:
(1) directly participated in the violation,
(2) failed to remedy the violation after being
informed of it by report or appeal,
(3) created a policy or custom under which
the violation occured,
(4)was grossly negligent in supervising
subordinates who committed the violation, or
(5) was deliberately indifferent to the rights of
others by failing to act on information that
constitutional rights were being violated."

**48.** For the plaintiff to succeed on a claim of supervisory liability, the plaintiff must now show either that;
"A supervisor official, after learning
of the violation through a report or
appeal, may have failed to remedy the wrong...."

> A supervisory official may be liable
> because he or she created a policy or
> custom under which unconstitutional
> practices occurred, or allowed such
> policy or custom to continue....
> Lastly, a supervisory may be personally liable
> if he or she was grossly negligently
> managing subordinates who caused the unlawful
> condition or event."
> See Johnson v. Glick,481 F.2d 1028,1034 [2nd. Cir.1973]

**49.** It is common and unwritten practice within the N.Y.S.D.O.C.C.S ranks and file that the prisoner is never telling the truth. In addition, correctional staff will almost at all cost given will fabricate information to protect the lively-hood of his/her fellow officer. Within this scheme of practice, harassment of all kinds takes place because there is no inner-departmental entity that will advocate for the prisoner unbiasly. Only in rare occasions will the prisoner prevail on a claim of a violation of an constitutional guarantee.

**50.** The reason for this is because the more standard that is required for the prisoner having to overcome to prove that, he had informed the supervisor of the constitutional violation, and the supervisor had done nothing more than assign the matter to an subordinate to investigate. See Mateo Fupp.2d Id. at 430-31. Under these rulings it is almost impossible to prove that the investigation that was alleged to have taken place did not take place and only the requirement needed to dismiss the complaint summarily will be to state that an investigation was conducted and report the alleged findings. Even if the results of the investigation turns out to be in fact the truth, the subordinate will almost never be reprimanded.

**51.** The plaintiff declares that even after [t]he plaintiff complained of his rights being viiolated, they manifested and developed into more violations of plaintiff's rights. Such as, after

after the plaintiff appealed and complained of the initial deprivation of his constitutional rights being violated, no remedy for plaintiff's complaints had been resolved. Such as, being reimbursed the $5.00 surcharge from the misbehavior report being dismissed; being reimbursed for the lost wages for being keep-locked unjustly; and not being reinstated to the initial assigned program. A program that, the plaintiff, for the most part, should not have been removed from in the first place. Simply because, there was no relation to the incident and the plaintiff's programing, nor had it bore any semblance towards the plaintiff being a security risk to be taken out of.

## X. DAMAGES

52. It is established in the **COURT OF APPEALS** for the **SECOND CIRCUIT** that:

> personal involvement of defendants in alleged
> constitutional deprivation is a
> prerequisite to an award of
> damages under §1983".
> See Moffitt v. Town Of Brookfield,950 F2d 880,885 [2d.1991] &
> McKinnon v. Patterson,568 F2d 930,934 [2nd.Cir.1977].

53. The plaintiff is entitled to monetary damages and injunctive relief for being denied of his constitutional rights under the **FIRST AMENDMENT** to practice his religion without facing any kind of reprisals pursuant to **RLUIPA** and (Directive § 4202). Those violations were for not being permitted to practice/attend and observe his religious holy day (Ed-ul-Fitr). See Snakur v. Selsky, F3d. 106,119 [2nd Cir.2004]

> "**Ford** has subsequently been overruled by this Court."
> See Ford v. McGinnis,352 F3d.582 (2d Cir.2003).

For being retaliated against for complaining about professional misconduct and being prevented from attending a religious service. See Mateo v. Fischer,682 F.Supp.2d 423,433.

"[o]nly retaliatory conduct that would
deter a similarly situated individual of
ordinary firmness from exercising his or her
constitutional rights an adverse
action for a claim of retaliation".
Citing Dawes v.Walker,239 F3d.489,493 [2nd Cir.2001]
Davis v. Goord,320 F3d.346,353 [2nd Cir.2003].
ID.

## XI. REMEDY/RELIEF SOUGHT

**54.** The plaintiff seeks $250,000,00. in monetary damages against
the defendants in their individual and official capacity. The
plaintiff seeks also that the defendants be ordered to cease and
desist in the bias conduct of depriving certain prisoners of their
constitutional right to freely exercise their religion. The plaintiff
seeks that Defendant 2 (Mark V.Fannelli) be relieved from his current
employment as an correctional officer for the state of New York. And
that he be investigated for the commission of partaking in Hate
Crimes, in violation of state law. It is the plaintiff"s understand
of this statute that; Mark V.Fannelli had violated and has cross the
threshold thereof.

**PENAL LAW § 485.05**
**1. A person commits a hate crime when he**
**or she commits a specified offense**
**and either:**
**(a) intentionally selects the person against**
**whom the offense is committed or intended**
**to be committed in whole or in**
**substantial part because of a**
**belief or perception regarding the**
**race, color, national origin, ancestry**||
**gender, religion, religious practice, age,**
**disability,or sexual orientation of a person**
**regardless of whether the belief or**
**perception is correct...**
**ID.**

**55.** A stated in claim, "under the color of law", Def.2 had
committed an 'hate crime' when he had made racist and derogatory
comments about the plaintiff and his 'religious practice'. He

selected the plaintiff to be subjected to unwarranted deprivation of religious freedoms and to participate in those practices as well as institutional programs because of his perceptions.

**WHEREFORE;** the plaintiff request that the Court grant the following relief:

A. Issue a Declaratory Judgement stating that:

1. The unlawful cell confinement of the plaintiff "**THIEL THAMAR STAPLETON**" by Defendant(s) Chappius, Ballard, and Fannneli, violated the plaintiff's rights under the **FIRST & FOURTEENTH AMENDMENT** to the **UNITED STATES CONSTITUTION** and constituted <Unlawful Confinement> under both the **Federal** and **State** law's respectfully.

2. Defendant Chappius's abject [f]ailure to take action to circumvent and curb this unconstitutional practice from taking place, after being given both notice and constructive and actual notice. This was an affirmative failure to act. Further, the defendant Chappius, was grossly negligent in supervising subordinates that committed the wrongful acts, whereby the defendant exhibited deliberate indifference to the rights of the plaintiff by failing to act on information that unconstitutional acts were occurring.

3. Defendant "Ballard" whom was the plaintiff's designated Tier II Hearing Officer, whereby he intentionally infringed on the plaintiff's right to have an <impartial hearing officer> by neglecting to examine the Departmental Directive(s) Sec.XIII by calling on the Chaplain to verify the plaintiff's testimony where there lied an question as to whether it was permissible for the plaintiff to wear an Kufi as his religious practice.

4. Defendant "Fanneli" intentionally violated Departmental

Directive and protocol and criterion that mandates <Religious Head Coverings> specified with Departmental Directive §4202 Sec. XIII. Said directive is factually specific, and does not under any circumstance provide authorization to a <Sergeant>, to determine who is authorized to wear religious head coverings.

5. Defendant "Fanneli" acted unconstitutionally, Arbitrarily, and Capriciously, by intentionally violating the plaintiff's rights and manufacturing a Misbehavior Report so as to prevent the plaintiff from attending his religious holy day feast (Ed-ul-Fitr). Further, the defendant's misconduct had taken a turn for retaliation when he had the plaintiff terminated from his assigned program. The defendant's <misconduct> violated the statutory provisions of the <CIVILIAN EMPLOYEE'S MANUAL>, 7 N.Y.C.R.R.; CIVIL SERVICE LAW; and Departmental Rules & Regulations contained within the Directives, and the DUE PROCESS CLAUSE of  the FIRST & FOURTEENTH AMENDMENT to the UNITED STATES CONSTITUTION. Moreover, this defendant should not be given <"Indemnification> because his actions resulted from <Intentional Wrongdoing>, which disqualifies [him] from seeking <Qualified Immunity Claims>.

B. The Plaintiff "THIEL THAMAR STAPLETON" waives the issuance of an <Injunction> by the Court, "or the "ollowing reasons:

1. The plaintiff was released from <Cell Confinement> and allowed to move about freely. However, the plaintiff was not restored to all programs and rights initially afforded to him.

2. Simultaneously, the Defendant Ordered the <expungement> of the disciplinary sanction from the plaintiff's record with the exception of re-imbursing the plaintiff of the $5.00 surcharge. However, the sanction had been removed from the plaintiff's Institutional, Parole,

and <u>Administrative</u> records.

C. Award Compensatory Damages In The Following Amounts;

1. $200,000 jointly and severally against defendant(s) <u>Chappius,</u> <u>Ballard,</u> and <u>Fanneli</u>, for the <Unlawful Confinement>, including deprivation of religious practice rights and deprivation of prohibiting the attendance of an religious ceremony, in violation of the <u>First Amendment</u>, and the emotional injury resulting from their denial of **Due Process** in connection with the plaintiff's Disciplinary Proceeding.

2. $50,000 jointly and severally against defendant Sergeant Mark V. Fanneli, for his intentional infliction in manufacturing the <Falsification Of Departmental Records>, violating the protocol of the <Civilian Employee's Manual>, <u>Unconstitutionally</u>, <u>Arbitrarily</u>, and <u>Capriciously</u>, <retaliating> against the plaintiff for making an redress/complaint against prison officials and their <Unconstitutional> prison policy.

By this demand, the plaintiff seeks Compensatory Damages for the loss of his Constitutional Right to practice and attend an religious event and to wear an religious head-covering. Also for the lost of wages for the unlawful exclusion from the rehabilitative process, [and other specified privileges that the plaintiff was <deprived> that is and has been before mentioned elaborated on in this Complaint].

**I DECLARE UNDER THE PENALTY OF PERJURY PURSUANT TO 28 U.S.C. §1746, THAT THE FOREGOING IS TRUE AND CORRECT.**

Mr.THEIL THAMAR STAPPLETON
Plaintiff Pro-Se
DIN #04-A-1701
Elmira Correctional Facility

POST OFFICE BOX 500
1879 Davis Street & Bancroft Road
Elmira,New York 14902-500

SWORN TO BEFORE ME

THIS DAY OF 11 TH ,November, 2014

N O T A R Y   P U B L I C

STEVEN D. LEE
NOTARY PUBLIC, STATE OF NEW YORK
CHEMUNG COUNTY, LIC. # 01LE6231045
COMMISSION EXPIRES NOV. 15, 20 14

FORM 2171B (1/12)
Side 2

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

_____ *Elmira* _____ **Correctional Facility**

## INMATE MISBEHAVIOR REPORT ♦ INFORME DE MAL COMPORTAMIENTO DEL RECLUSO

| 1. NAME OF INMATE (Last, First) ♦ NOMBRE DEL RECLUSO (Apellido, Nombre) | NO. ♦ NÚM. | HOUSING LOCATION ♦ CELDA |
|---|---|---|
| *Stapleton, Theil* | 04A1701 | I-1-15 |

| 2. LOCATION OF INCIDENT ♦ LUGAR DEL INCIDENTE | INCIDENT DATE ♦ FECHA | INCIDENT TIME ♦ HORA |
|---|---|---|
| *Ball Park* | 9/21/14 | aprx 945 pm |

3. RULE VIOLATION(S) ♦ VIOLACIÓN/ES

*06.10 Direct Order.

4. DESCRIPTION OF INCIDENT ♦ DESCRIPCIÓN DEL INCIDENTE

On Sunday September, 21, 2014 at approximately 9:45pm I talked to inmate Stapleton, T. 04A1701 I-1-15 about the green Kufi he was wearing on his head. I asked Stapleton if that was a Kufi on his head? Stapleton did not respond. I told Stapleton that his religious designation is NOI. and they have no approved head covering per CROC Decision EL-35734-09 dated 6/24/09. I gave Stapleton a direct order to remove the Kufi from his head and told him not to wear it. Stapleton defied my order and just smiled and handed me his I D card and said "Do what you gotta do!" I have counseled Stapleton several times in the past about not wearing the Kufi. Stapleton has blatantly defied my orders and openly refused to comply with my instructions.

| REPORT DATE ♦ FECHA | REPORTED BY ♦ NOMBRE DE LA PERSONA QUE HACE EL INFORME | SIGNATURE ♦ FIRMA | TITLE ♦ TÍTULO |
|---|---|---|---|
| 9/22/14 | M FANELLI | *signature* | SGT |

5. ENDORSEMENTS OF OTHER EMPLOYEE WITNESSES (if any)     SIGNATURES:

ENDOSOS DE OTROS EMPLEADOS TESTIGOS (si hay)     FIRMAS:   1. _____

2. _____     3. _____

**NOTE: Fold back Page 2 on dotted line before completing below.**

DATE AND TIME SERVED UPON INMATE   9-23-14   9:15 pm   NAME AND TITLE OF SERVER   *D. Wenzel* C.O.

FECHA HORA DADO AL RECLUSO _____   NOMBRE Y TÍTULO DEL QUE ENTREGA _____

You are hereby advised that no statement made by you in response to the charges or information derived therefrom may be used against you in a criminal proceeding. ♦ Por este medio se le informa que no se puede usar ninguna declaración hecha por usted como respuesta al cargo o la información derivada de ella en una demanda criminal.

## NOTICE ♦ AVISO

**REVIEWING OFFICER (DETACH BELOW FOR VIOLATION HEARING ONLY)**

You are hereby notified that the above report is a formal charge and will be considered and determined at a hearing to be held. ♦ Por este medio se le notifica que el informe anterior es un carge formal el cual se considerará y determinará en una audiencia a celebrarse.

The inmate shall be permitted to call witnesses provided that so doing does not jeopardize institutional safety or correctional goals. ♦ Se le permitirá al recluso llamar testigos con tal de que al hacerlo no pondrá en peligro la seguridad de la institución o los objetivos del Departamento.

If restricted pending a hearing for this misbehavior report, you may write to the Deputy Superintendent for Security or his/her designee prior to the hearing to make a statement on the need for continued prehearing confinement. ♦ Si está restringido pendiente a una audiencia por este informe de mal comportamiento, puede escribirle al Diputado del Superintendente para Seguridad o su representante antes de la audiencia para que haga una declaración acerca de la necesidad de continuar bajo confinamiento, previo a la audiencia.

Distribution: WHITE - Disciplinary Office   CANARY - Inmate (After review) ♦ Distribución: BLANCA - Oficina Disciplinaria   AMARILLA - Recluso (después de la resión)

Case 1:14-cv-08958-NMS-HBS   Document 1   Filed 11/12/14   Page 28 of 40

DIN INMATE NAME:                                    HEARING DATE: 9/20/14

A. STATEMENT OF EVIDENCE RELIED UPON:

I FOUND THE MISBEHAVIOR REPORT AUTHORED
BY SGT McFARGLUE TO BE CREDIBLE WHERE
HE STATES THAT THE INMATE REFUSED TO

B. REASONS FOR DISPOSITION:

TO DISSUADE THIS INMATE FROM SIMILAR
ACTIONS IN THE FUTURE ALSO TO READ AND
...

C. SPECIAL INSTRUCTIONS ON CORRESPONDENCE RESTRICTIONS AND REFERRALS:

I HAVE RECEIVED A COPY OF THIS HEARING DISPOSITION DATED

HEARING OFFICER SIGNATURE          INMATE SIGNATURE (PLACE & TIME RECEIVED)

YOU ARE HEREBY ADVISED OF THE FOLLOWING APPEAL PROCEDURES:

FOR TIER II/III HEARINGS, APPEAL TO SUPERINTENDENT WITHIN 72 HOURS

FOR TIER III HEARINGS, APPEAL TO COMMISSIONER WITHIN 30 DAYS

SUCCESSFUL PROGRAM COMPLETION

Case 1:14-cv-08958-WMS-HBS   Document 1   Filed 11/12/14   Page 29 of 40

ELMIRA GENER                                    TAPE NUMBER  14-92

DIN# 06A1703 NAME: STAPLETON, THEIL              LOCATION: BLDG 15S

INCIDENT DATE & TIME        09/21/14   02:45 PM    TIER 2

REVIEW DATE                 09/22/14          BY

DELIVERY DATE & TIME         9/23/14   9:45      BY

HEARING START DATE & TIME    9/26/14  10:15      BY

HEARING END DATE & TIME      9/26/14  10:        BY

CHARGE
NUMBER    DESCRIPTION OF CHARGES                  REPORTED BY              DISPOSITION

104.13    REFUSING DIRECT ORDER              SGT                           GUILTY

ANY GUILTY DISPOSITION WILL RESULT IN A MANDATORY DISCIPLINARY SURCHARGE IN THE
AMOUNT OF FIVE (5.00) DOLLARS BEING ASSESSED AUTOMATICALLY AGAINST THE INMATE.

| PENALTY CODE | DESCRIPTION | PENALTY NO DAYS | START DATE | RELEASE DATE | SUSPEND NO DAYS | DEFERRED NO DAYS | RESTITUTION $ |
|---|---|---|---|---|---|---|---|
| B000 | KEEPLOCK | 30 | 9/26/14 | 10/26/14 | | | |
| F000 | COMMISSARY | | | | | | |
| E000 | PACKAGES | | | | | | |
| G000 | TELEPHONE | | | | | | |

APPEAL FROM TIER II DISCIPLINARY HEARING

This is an appeal from the appellant finding him guilty of violating rule 106.10 (Direct Order), where the disposition rendered sentenced appellant to;

30 keeplocked;
30 days loss of commissary;
30 days loss of telephone and;
30 days loss of packages, on September 25,2014.

There are three issues that are being appealed.

1) The tier hearing officer had rendered his disposition without consulting OMH staff. Appellant is a mental health patient, and before the rendering of any disposition in a disciplinary action can be made, OMH staff is required to be contacted, and read into the record, that their input as to the demeanor and the mental state of the appellant had been assessed for consideration. This is done because it is pivotal to assess the mental stability of the appellant and to determine whether or not the appellant had been in a conscious state of mind during the time of the alleged incident.

2) The evidence relied upon by the hearing officer was solely that of the written misbehavior report. The contents of the report required of the writer and, and of the tier hearing officer to, investigate the the directive relied upon to verify if said CORC standing is still in place and or to seek counsel from the prison chaplan. Such was not done in the matter now being appealed. See Dir. 4202, &;

3) The sentence imposed was excessive for the alleged incident. Appellant has not conducted himself in a matter which had undermined the safety and security of the prison. Nor has the appellant maintained an continued poor prison adjustment to the extent that he should be precluded from participating in his programing.

Respectfully Submitted,

Mr. T̶h̶e̶l̶ ̶l̶.̶ ̶S̶t̶a̶p̶l̶e̶t̶o̶n̶ ̶d̶i̶n̶.̶#04-A-1701

CC:

Mr.Theil T.Stapleton
Din.#04-A-1701
Cell Location:I-1-15
Date:October 7,2014
RE:Reinstatement Of Program

Deputy Superintendent Of Programs
Mr.F.Rhodes

    Sir;
    I have been taken out of programs. This was due to an misbehavior report that resulted in me being keeplocked for 30 days. Though the misbehavior report had no barring on my program participation, I was removed from it.

    I am requesting to be reinstated in the programs that I had been scheduled to partake in which were Law Library in the AM and Field House porter in the EVE. I have been released from keeplocked status before the 30 day sanction had expired from an appeal that I had submitted. I have never had any program related problems and it is in the best interest for my mental health to continue on with the program that I had been assigned to.

    Please allow me to be reinstated to my programs.
Thank-You and God Bless.


                    Mr.Theil T.Stapleton Din.#04-A-1701


CC:

```
To:Captain Keller                    Received ECF
From:Mr.Theil T.Stapleton
Din.#04-A-1701                          OCT 1 6 2014
H.U.:I-1-15
Date:October 10,2014                  Captain's Office
RE:Appeal From Misbehavior Report
```

Sir;

Please be advised that, I have not received an written decision as to why my previous misbehavior report was dismissed an the sanctions imposed upon me were restored.

However, I have not been restored to my program participation. With the dismissal of the misbehavior report and the releasing from cell confinement, I should be able to be reinstated to my previous active program participation from which I have been terminated from.

Those programs were: Law Library AM &;

Field house porter in the Evening.

Please allow me to be reinstated to my regular program participation as I have not conducted myself in any way that had reflected badly on my programing.Thank-You for your time and assistance with this matter.

Respectfully Sent,

Mr.Theil T.Stapleton
Din.# 04-A-170

CC:

10/16/14
Denied. Request programing through appropriate channels ie program committe. Accept to Dehlo

STATE OF NEW YORK-DEPARTMENT OF COMMUNITY AND CORRECTIONAL SERVICES
PRISONER COMPLAINT FORM

Facility:Elmira Correctional Facility

DATE:October 7,2014

NAME:Mr.Theil T.Stapleton Dept.#04-A-1701 Housing Unit:I-1-15

Program:Law Library-AM/Field House Ptr.-EVE

Incident: Sargent M.Fanelli has taken it above and beyond his authority to have me removed from my programs. I was keeplocked due to an incident in which Sargent Fanelli had deprived me of my first amendment right to practice my religion. I was written an misbehavior report and placed on keeplock. The disposition rendered was 30 days keeplock; loss of packages; loss of telephone and loss of commissary. After an appeal submitted by me, I have been released and all restrictions had been restored except my programs. His (Sargent M.Fanelli) is blatant harassment and retaliation.

Grievant
Signature_____ #04-A-1701

Grievance
Clerk:_____DATE:_____

Action Requested By Prisoner: That this sargent be made to take religious, social and civil rights classes so as to understand that he can not abuse his authority. That this sargent be made to cease coercing other correction officers and prison staff to take action against in a manner that perpetuate his bias and prejudicial attitude towards me.

Mr.Theil T.Stapleton
Din.#04-A-1701
Elmira Correctional Facility
P.O. Box 500
Elmira,New York 14902-0500
State Of New York-Department Of
Correction And Community Suprevison
Commissioner:Anthony Annucci
The Harriman State Campus,Building No.#2
1220 Washington Avenue
Albany, New York 12226-2050

Date:October 7,2014

### RE:Harassment By Facility Sargent

Sir;
Please be advised that I am having continual problems from an
area supervisor that can not be, or, is not attempting to be resolved
on the facility level. This, I presume is because the correction
officer in question is an Sargent. Sargent M.Fanelli has taken it
above and beyond his authority to have me removed from my programs. I
was keeplocked due to an incident in which Sargent Fanelli had
deprived me of my first amendment right to practice my religion. I
was written an misbehavior report and placed on keeplock because of
an Kufi that that I was wearing.

The disposition rendered was 30 days keeplock; loss of packages;
loss of telephone and loss of commissary. After an appeal submitted
by me, I have been released (I believe) and all restrictions had been
restored except my programs. His (Sargent M.Fanelli) actions and
conduct are blatant harassment and retaliation for me expressing that
I would like to practice my religion.

I have done anything to warrant his ill treatment of me and to
constantly under go his verbal abuse and threats to do bodily harm to
me. He is antagonizing me to the extant that, it is an attempt to
cause me to have an mental break-down and or to try to get me to act
like I had attempted to attack him so he can be justified to do
bodily harm to me.

I am slowly becoming paranoid because I have attempted suicide
three times already in the past, and I am starting to think this is
what his plan for me is.

Please intervene and order this officer to cease with the harassment and the violation of what little constitutional rights that I do have remaining. If this can not be done, please place me on an immediate transfer to an facility closer to my family so that they can better monitor my well-being.

Thank-You for your time and I humbly await your response.

Sincerely,

Mr.Theil T.Stapleton Din.#04-A-1701
Elmira Correctional Facilty

CC:

Mr.Theil T.Stapleton
Din.#04-A-1701
Elmira Correctional Facility
P.O. Box 500
Elmira,New York 14902-0500
State Of New York-Department Of
Correction And Community Suprevison
Commissioner:Anthony Annucci
The Harriman State Campus,Building No.#2
1220 Washington Avenue
Albany, New York 12226-2050

Date:October 7,2014

RE:Harassment By Facility Sargent

Sir;
     Please be advised that I am having continual problems from an
area supervisor that can not be, or, is not attempting to be resolved
on the facility level. This, I presume is because the correction
officer in question is an Sargent. Sargent M.Fanelli has taken it
above and beyond his authority to have me removed from my programs. I
was keeplocked due to an incident in which Sargent Fanelli had
deprived me of my first amendment right to practice my religion. I
was written an misbehavior report and placed on keeplock because of
an Kufi that that I was wearing.

     The disposition rendered was 30 days keeplock; loss of packages;
loss of telephone and loss of commissary. After an appeal submitted
by me, I have been released (I believe) and all restrictions had been
restored except my programs. His (Sargent M.Fanelli) actions and
conduct are blatant harassment and retaliation for me expressing that
I would like to practice my religion.

     I have done anything to warrant his ill treatment of me and to
constantly under go his verbal abuse and threats to do bodily harm to
me. He is antagonizing me to the extant that, it is an attempt to
cause me to have an mental break-down and or to try to get me to act
like I had attempted to attack him so he can be justified to do
bodily harm to me.

     I am slowly becoming paranoid because I have attempted suicide
three times already in the past, and I am starting to think this is
what his plan for me is.

Please intervene and order this officer to cease with the harassment and the violation of what little constitutional rights that I do have remaining. If this can not be done, please place me on an immediate transfer to an facility closer to my family so that they can better monitor my well-being.

Thank-You for your time and I humbly await your response.

Sincerely,

Mr.Theil T.Stapleton Din.#04-A-1701
Elmira Correctional Facilty

CC:

Mr.Theil T.Stapleton
Din.#04-A-1701
Cell Location:I-1-15
Date October 5,2014
RE.:Formal Complaint


Mr.P.Chappius Jr.
Superintendent:Elmira Correctional Facility


    Sir:Since I have filed an complaint against Sargent M.Fanelli, I
have been denied to participate in the religious event meal on the
above-mentioned date. It is clear that being keeplocked, prevents me
from physically being present to participate, however, it does not
preclude me from having said religious meal being delivered to my
cell, as other prisoners had been afforded. Sargent M.Fanelli has
order that my name be removed from the master feed-up list and from
the event in its totality. Sargent M.Fanelli is retaliating against
me and for a second time, has shown disparaging and bias conduct
towards me. His conduct is becoming threatening to my safety and
mental stability to continue in this facility and I am concerned that
this sargent will have another officer place a weapon in my cell and
or something worse.

    I am making this official complaint to inform you that his
conduct is beyond being unprofessional and has bordered the line of
fixation to cause my well-being to compromised.

    Please address this problem and please have this sargent and
others to discontinue their harassment of me.

    Thank-You.


Mr.Theil T.Stapleton.

STAPLETON, T.   04A1701   I1-15

# Elmira Correctional Facility
# Inmate Grievance Department

**GRIEVANCE:**        EL42 - *685* - 14

*Consolidated*

The above Grievance has been received and filed.

___X___ Your Grievance has been received and filed. The I.G.R.C. has 16 calendar days, from the date filed, to have a hearing. Therefore, the above Grievance is due for a hearing on ___6·25·14___.
If you do not receive a Grievance hearing by this date, you may appeal this Grievance to the Superintendent or wait to have a hearing and grant an extension.

_____ Your Grievance has been filed Staff Conduct (Code #49), strip search (Code #25.1), strip frisk (25.2) and has been forwarded to the Superintendent for an investigation and a response within (25) calendar days from the date filed, in accordance with Directive #4040.

**NOTE: Harassment Grievance's have to be responded to within (25) calendar days.**
You will not receive a Grievance hearing, but will receive a copy of the Superintendents Response. If the Superintendents Response is beyond the applicable time frame, you may forward your Grievance to C.O.R.C., by informing the I.G.R.C.

---

Please check the appropriate area and send to the I.G.R.C.

Grievance: EL42 - *685* - 14

_____      *Appeal to the Superintendent as Grievance is untimely.

_____      *Being informed of the above, I would still like to have an I.G.R.C. Hearing.

_____      *I am keeplocked under 30 days. Please hold my hearing in absentee.

_____      The Superintendent Response is untimely, pass through to the C.O.R.C.

* Not for codes 49, 25.1, 25.2

_____    _____    _____    _____
**NAME**            **DIN**           **CELL**         **DATE**

KUFI FOR N.O.I.


16

# STATE OF NEW YORK-DEPARTMENT OF COMMUNITY AND CORRECTIONAL SERVICES
## PRISONER GRIEVANCE COMPLAINT

EL-42685.14
Grievance No.

Elmira Correctional Facility

Date: June 23, 2014

NAME: Mr. Theil T. Stapleton    Dept. No. #04-A-1701    Housing Unit I-1-15

Program Idle AM Rec. Port. PM
Incident: On or about the approximate date of June 4, 2014, I was
ordered to not wear any Kufi because I was not a practitioner of the
common traditional muslim faith. I was told that I am practitioner of
the Nation Of Islam and that I am not authorized to wear any head
gear as do other muslims. In addition to this insult, I had been told
that, I am apart of an domestic terrorist group, and I advocate hate.

Grievant
Signature _Theil T. Stapleton_ _#04-A-1701_

Grievance Clerk_____ Date:_____

Action requested by prisoner: That this facility prison policy and or
the directives cease and desist in the sterotypical racist comments
about the Nation Of Islam and that it be recognized that the Nation
Of Islam are in fact of the Muslim community and are allowed to wear
Kufi's if they so choose to do so. Also that no retaliation for this
grievance be taken up against me as it has been done in the past.